# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEAH MILES-CACELLA and MARGARET KENNEDY,<br><br>        Plaintiffs,<br><br>        v.<br><br>INTERNATIONAL FELLOWSHIP OF CHRISTIANS AND JEWS,<br><br>        Defendant. | No. 18 CV 7563<br><br>Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Margaret Kennedy alleges that one of her supervisors at the International Fellowship of Christians and Jews stared at her breasts, spread his legs suggestively and refused to promote her because she would not have sex with him. Plaintiff Leah Miles-Cacella alleges that the Fellowship retaliated against her when she reported similar conduct and then terminated her because of her sex. She also alleges that she was promised a bonus if she met certain undefined metrics, and that the Fellowship abused its discretion when it declined to award that bonus. They bring claims against the Fellowship pursuant to Title VII and the Illinois Human Rights Act, and Miles-Cacella also alleges that the Fellowship violated the Illinois Wage Protection and Collection Act. The Fellowship moves to dismiss the complaint in its entirety.

I.   **Legal Standards**

A complaint must contain a short and plain statement that plausibly suggests a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss, although a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, the court need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Ashcroft*, 556 U.S. at 678, 80–82. The plaintiff must provide "more than labels" or "a formulaic recitation of a cause of action's elements," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562.

II.  **Facts**

When the Fellowship hired Miles-Cacella, they agreed to give her a raise after her six-month performance review if she reached "certain, but undefined" metrics. [1] ¶ 17.[1] As Miles-Cacella and her team started working on their first project, it became clear that the Fellowship was not prepared to provide the support she and her team needed to be successful. [1] ¶¶ 22, 23. The Fellowship fired the other members of Miles-Cacella's team and moved her to a new role. [1] ¶¶ 23, 26. Nonetheless, she received a high-five and was told she was doing a great job during a meeting with her

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the allegations in the complaint. [1].

supervisor that took place six months after she started work. [1] ¶¶ 18, 19. Her one-year performance review was positive, too. [1] ¶ 20.

In her new role, Miles-Cacella started working more closely with George Mamo, a vice president at the Fellowship (and her superior). [1] ¶ 29. During a meeting in Chicago, Mamo hugged her in a way that made her feel uncomfortable, pressing his body against her breasts. [1] ¶ 32. During that same meeting, he stared at her breasts and did not look her in the eye. *Id*. At a different meeting, Mamo's demeanor was hostile and rude, and Miles-Cacella left the meeting in tears. [1] ¶ 36. His behavior created constant stress that significantly affected her work life. [1] ¶ 33. Miles-Cacella told others (both at the Fellowship and elsewhere) about her experiences with Mamo. [1] ¶¶ 33–35, 38, 46, 49. At least some of them told her they had experienced similar treatment. *See* [1] ¶ 34.

Miles-Cacella's immediate supervisor eventually told her she was being placed on probation and, at the same time, gave her a goal of raising $250,000 by the year's end. [1] ¶¶ 37, 39, 40. Miles-Cacella alleges that this was a sign the Fellowship was trying to terminate her because she is a woman and had spoken out about sexual harassment. [1] ¶ 41. When she expressed reservations about being able to meet this goal, Mamo offered her an opportunity to resign. [1] ¶ 42. She declined, [1] ¶ 43, and Mamo told her that if she could not meet the goal, the Fellowship would offer her a four-week severance. [1] ¶ 44. Miles-Cacella ended up exceeding the $250,000 goal

before the end of the year, [1] ¶¶ 51, 52, but was nonetheless terminated. [1] ¶¶ 54, 56. She never received the raise. [1] ¶ 54.

Mamo was Kennedy's immediate supervisor. [1] ¶ 59. On many occasions, Mamo either came into Kennedy's office or called her into his office and then stared at her breasts. [1] ¶ 62. He also spread his legs suggestively during meetings with Kennedy and other female employees, [1] ¶ 63, and yelled at Kennedy (and other women, but not other men) in front of her colleagues. [1] ¶ 64. Kennedy alleges that this behavior was intimidating and harassing and created a hostile work environment that seriously affected her work-life and mental and emotional well-being. [1] ¶ 65. Kennedy complained to both the president of the Fellowship and the president's daughter, but Mamo was never disciplined. [1] ¶ 66.

Kennedy also alleges that Mamo engaged in an affair with a female employee and that the same female employee was subsequently promoted. [1] ¶ 67. She also alleges that Mamo later told her that she would not be considered for a promotion because she did not "play nice." [1] ¶ 68.[2] Kennedy alleges that the subtext of this comment was that she was not being considered because she was a woman who had complained about Mamo's harassment and abuse, and because she would not sleep with Mamo. *Id*. She resigned because she believed the Fellowship's workplace environment would never change, and that she would continue to be subjected to

---

[2] There are two paragraphs numbered 68, and two paragraphs numbered 69. Unless otherwise specified, all references are to the first paragraphs numbered 68 and 69.

4

Mamo's abuse and harassment. [1] ¶ 69. She also believed that if she did not resign, Mamo would punish her. *Id.*

## III. Analysis

Miles-Cacella and Kennedy allege that the Fellowship discriminated against them in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2). [1] ¶¶ 68[3]–74, 76–81, 83–86.[4] Title VII prohibits "discriminat[ing] against any individual … because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. One of the ways an employer can violate this provision is "when 'discrimination based on sex ... create[s] a hostile or abusive work environment.'" *Equal Employment Opportunity Comm'n v. Costco Wholesale Corp.*, 903 F.3d 618, 624 (7th Cir. 2018). In order to support her hostile work environment claim, *see* [1] ¶ 84(a), Kennedy must allege—factually or inferentially, *Bell Atl. Corp*, 550 U.S. at 555—that she was "(1) subjected to unwelcome sexual conduct, advances, or requests;

---

[3] This citation is to the second paragraph numbered 68.

[4] The complaint includes at least three separate claims under 42 U.S.C. § 2000e-2. In the first, Kennedy brings a claim for "Sexual Harassment – Hostile Work Environment under Title VII (42 U.S.C. §§ 2000e-2)." [1] ¶¶ 68–74. In the second, Miles-Cacella brings a claim for "Retaliation for Reporting/Opposing Sexual Harassment and Gender Discrimination in Violation of Title VII (42 U.S.C. §§ 2000e-2)." [1] ¶¶ 76–81. And in the third, both Miles-Cacella and Kennedy bring claims for "Gender Discrimination in Violation of Title VII (42 U.S.C. §§ 2000e-2)." [1] ¶¶ 83–86. In the sub-paragraphs of that third claim, Kennedy says that her gender discrimination claim is based on her being subjected to a hostile work environment, [1] ¶ 84(a), and Miles-Cacella says her gender discrimination claim is based on retaliation and her termination. *See* [1] ¶ 84(b)–(e). Because some of these allegations are vague and others are duplicative, and because the Fellowship's motion to dismiss does not address any other claims, I analyze the complaint as though it brings three Title VII claims (and the motion to dismiss as though it addresses only those same three claims): Kennedy's gender discrimination claim premised on the allegation that the Fellowship created a hostile work environment, *see* [1] ¶¶ 68–74, 84(a), Miles-Cacella's retaliation claim, [1] ¶¶ 76–81, 84(b), and Miles-Cacella's gender discrimination claim premised on the allegation that the Fellowship terminated her because of her sex. [1] ¶¶ 84(e).

5

(2) because of her sex; (3) that were severe or pervasive enough to create a hostile work environment; and (4) that there is a basis for employer liability." *Costco*, 903 F.3d at 625.

The Fellowship moves to dismiss Kennedy's hostile work environment claim, arguing (among other things) that the complaint contains no specific or general factual allegations that would give rise to an actionable claim, [10] at 4, that Kennedy has failed to allege that Mamo solicited sex, [10] at 5; [20] at 2, and that the acts of spreading one's legs or staring at a woman's breasts are too innocuous to support a claim of sexual harassment. [20] at 2. Most of the Fellowship's arguments with respect to Kennedy's Title VII claim amount to attacks on her allegation that the unwelcome sexual conduct was severe or pervasive enough to create a hostile work environment. *See* [10] at 4–5; [20] at 2; *Costco*, 903 F.3d at 625. Isolated workplace harassment can create an objectively hostile work environment if it is severe, and "even one act of harassment will suffice if it is egregious." *Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 808 (7th Cir. 2000). The conduct must be "extreme" when considered in light of "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Costco*, 903 F.3d at 625. Whether conduct is severe and pervasive must be considered from both a "subjective and an objective point of view." *Costco*, 903 F.3d at 625.

With regard to the subjective perspective, the Fellowship points out that Kennedy waited more than ten years before quitting, and argues that her delay shows that none of the conduct could have reasonably interfered with her work performance. [10] at 4–5. But Kennedy has alleged that Mamo's actions seriously affected her work-life and her mental and emotional well-being, and that she eventually resigned because she feared further abuse and retaliation. [1] ¶¶ 65, 69. It is also reasonable to infer that Mamo's treatment of her affected her work performance. For now, her allegations are taken as true, and such reasonable inferences are drawn in her favor. *Ashcroft*, 556 U.S. at 678.

The Fellowship's remaining arguments go to whether a reasonable person in the plaintiff's position would find the work environment offensive. *Hostetler,* 218 F.3d at 807. The Fellowship cites cases applying the "hellish" standard, *see* [10] at 5 (citing *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430-31 (7th Cir. 1995)), but that standard has been rejected. *Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 637 (7th Cir. 2019) ("[w]hile a 'hellish' workplace is surely actionable, plaintiffs' evidence need not show a descent into the Inferno"). It cites no binding precedent for its assertion that "mere ogling" is, as a rule, non-actionable. *See* [10] at 5 (citing *Caratachea v. Homewood Indus.*, No. 01 C 9845, 2002 WL 31844997, at *4 (N.D. Ill. Dec. 18, 2002)). The test is based on "all circumstances," and is not "mathematically precise." *Costco*, 903 F.3d at 625. Actionable discrimination can take the form of "demeaning, ostracizing, or even terrorizing the victim because of her sex." *Id*. at 626.

7

While the complaint may not allege that Mamo explicitly solicited sex, *see* [10] at 5, there is no requirement that Kennedy make such an allegation. *Costco*, 903 F.3d at 626 (the alleged harassment "need not consist of pressure for sex, intimate touching, or a barrage of deeply offensive sexual comments"). *See also Hall v. City of Chicago*, 713 F.3d 325, 327 (7th Cir. 2013) (plaintiff stated a hostile work environment sex discrimination claim without alleging that sex was solicited). In any event, the complaint sufficiently alleges that Mamo impliedly solicited sex through body language and subtext. *See, e.g.,* [1] ¶¶ 32, 68. For instance, a reasonable inference is that when Mamo spread his legs suggestively during meetings (or when he stared at Kennedy's breasts), he was suggesting that Kennedy should engage in sexual conduct with him. *See* [1] ¶¶ 62, 63. This inference is particularly reasonable given the allegation that other women reported experiencing similar treatment from Mr. Mamo (contradicting an inference that Mamo's actions were accidental). [1] ¶ 34. And while Kennedy did not allege a change in the frequency of this conduct, there is no requirement that she do so; she has alleged that Mamo stared at her breasts, suggestively spread his legs and yelled at her (but not other men) "numerous times." [1] ¶¶ 62–64. If true, these allegations could demonstrate extreme and demeaning behavior sufficient to give rise to an actionable claim, *see Gates*, 916 F.3d at 637; *Costco*, 903 F.3d at 626, especially considered in addition to her allegation that she was passed up for a promotion because she refused to have sex with Mamo. [1] ¶¶ 67, 68. The motion to dismiss is denied insofar as it addresses Kennedy's gender discrimination claim under 42 U.S.C. § 2000e-2.

Miles-Cacella alleges that the Fellowship retaliated against her when it terminated her for reporting sexual harassment, in violation of 42 U.S.C. § 2000e-2.[5] [1] ¶¶ 76–81; 84(b). The Fellowship argues that there are no allegations "other than gross speculation" that indicate Miles-Cacella's firing was retaliatory. [10] at 5. But Miles-Cacella has alleged circumstantial facts that suggest the motivation for her termination was retaliatory; shortly[6] after she began telling other employees about Mamo's allegedly harassing behavior, she was put on probation and given a very difficult fundraising goal. *See* [1] ¶¶ 34, 35, 39, 40. Despite meeting that goal, and after continuing to complain, she was fired and denied a raise. [1] ¶¶ 46, 51, 56, 57. *See Gracia v. SigmaTron Int'l, Inc.,* 842 F.3d 1010, 1019 (7th Cir. 2016) ("'[r]etaliatory motive may be established through circumstantial evidence such as suspicious

---

[5] Retaliation is prohibited under § 2000e-3, not § 2000e-2. *See* 42 U.S.C. § 2000e-3. But this citation error is immaterial at this stage of the case.

[6] The complaint alleges that the person who put Miles-Cacella on probation (Seth Moskovitz) was hired one month after a contentious meeting between Miles-Cacella and Mamo, *see* [1] ¶¶ 36–37, and that Miles-Cacella was put on probation about five months after Moskovitz was hired. *See* [1] ¶ 39. In the period between Moskovitz being hired and Miles-Cacella being put on probation, Miles-Cacella continued to tell other people (both at and outside of the Fellowship) about her issues with Mamo. [1] ¶ 38. Miles-Cacella also alleges that an investigation into her allegations began the same month that she was put on probation (in October of 2017), and that she was terminated at the end of December, 2017. [1] ¶¶ 46, 47, 56. Drawing all reasonable inferences in favor of Miles-Cacella, the decision to put her on probation could have come days after her comments about Mamo, *see* [1] ¶ 38, 39, and within a few months of the decision to terminate her. *See* [1] ¶ 56. There is no "bright-line rule about how close the events must be to establish causation, but in cases where there is 'corroborating evidence of retaliatory motive,' an 'interval of a few weeks or even months may provide probative evidence of the required causal nexus.'" *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015). Miles-Cacella has alleged corroborating evidence—she was terminated despite meeting an additional, difficult, last-minute goal that was only put in place after she began speaking to others about Mamo's actions, *see* [1] ¶ 51, 56—and the alleged timing falls within the bounds described in *Castro. Id. See also Barton v. Zimmer, Inc.*, 662 F.3d 448, 454 (7th Cir. 2011) (termination is an adverse employment action).

9

timing, ambiguous statements, evidence that the stated reason for the employment decision is pretextual and' other evidence from which an inference of discriminatory intent might be drawn").

The Fellowship argues that retaliation can only be actionable if it is in response to a formal complaint, and that the Fellowship could not have retaliated against Miles-Cacella because it asked her to resign before she made her first formal complaint. *See* [20] at 3. Retaliation is actionable even if it is in response to complaints made outside of the official avenues. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) ("an informal complaint may constitute protected activity for purposes of retaliation claims"). And Miles-Cacella alleges that both the request to resign and her termination occurred after she began informally discussing Mamo's actions, rendering defendant's timing arguments unpersuasive. *See* [1] ¶¶ 34, 35, 38, 56; [20] at 3. *See also Phelan v. Cook Cty.,* 463 F.3d 773, 786 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760 (7th Cir. 2016) (a plaintiff's statements to others in her department can be sufficient to put an employer on notice of sexual harassment). The motion to dismiss is denied insofar as it addresses Miles-Cacella's Title VII retaliation claim.

Miles-Cacella also alleges that the Fellowship discriminated against her because of her gender when it terminated her in violation of 42 U.S.C. § 2000e-2. *See* [1] ¶ 84(e). The Fellowship does not explicitly move to dismiss this portion of the complaint, *see* [10]; [20], but does generally allege that the complaint does not contain sufficient factual allegations. *See* [10] at 4–5. In order to survive a motion to dismiss,

Miles-Cacella "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Carlson,* 758 F.3d at 827. The complaint meets that standard because it alleges that Miles-Cacella was terminated because of her gender, *see* [1] ¶ 84(e); termination is an adverse employment action. *Barton v. Zimmer, Inc.*, 662 F.3d 448, 454 (7th Cir. 2011).

Kennedy and Miles-Cacella have also brought a set of claims under the Illinois Human Rights Act that is similar to their claims under Title VII. Kennedy alleges that the Fellowship created a hostile work environment and engaged in sexual harassment in violation of the Illinois Human Rights Act, 775 ILCS 5/2 102(D), [1] ¶ 75, and Miles-Cacella alleges that the Fellowship retaliated against her in violation of 775 ILCS 5/6-101(A). [1] ¶ 82. And again, both allege that the Fellowship discriminated against them because of their gender. *See* [1] ¶¶ 82, 87.

To the degree the Fellowship addresses these claims at all in its motion to dismiss, it argues that the complaint in general contains no factual allegations that would give rise to any claim "under the law as sexual harassment," and includes in its motion to dismiss a heading that covers the counts of the complaint that discuss the Illinois Human Rights Act. [10] at 4, 6. But it makes no argument, and cites no law, pertaining specifically to the Illinois Human Rights Act. *See* [10]; [20]. "[B]ecause the Illinois Human Rights Act is significantly similar to [Title VII], the Illinois courts often consult and rely upon the Federal law." *Carter Coal Co. v. Human Rights Comm'n*, 261 Ill.App.3d 1, 14 (5th Dist. 1994). Absent any argument that some pertinent aspect of Illinois's Human Rights Act differs from Title VII, and especially

where the Fellowship has moved to dismiss these claims via a single, sweeping reference and has failed to support those arguments with any citation to the complaint or Illinois law, the Fellowship's motion to dismiss is denied. *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority").

Lastly, Miles-Cacella alleges that the Fellowship failed to pay her bonus in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*. [1] ¶¶ 88–96. Under that statute, "[a]ny employee not timely paid wages, final compensation, or wage supplements by his or her employer … shall be entitled" to recover damages. 820 Ill. Comp. Stat. Ann. 115/14. "Wages" are defined to mean, "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 Ill. Comp. Stat. Ann. 115/2. "Payments to separated employees" are "final compensation." *Id*.

Claims for violation of the Wage Payment and Collection Act are "akin to breach of contract actions." *McCleary v. Wells Fargo Sec., L.L.C.*, 2015 IL App (1st) 141287, ¶ 29. To state a claim, Miles-Cacella must allege that "[s]he is owed compensation pursuant to an employment contract or agreement between the two parties." *Id*. "[A]n agreement under the IWPCA is 'broader than a contract,'" *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012), and there is no requirement that the agreement be written. *See Zabinsky v. Gelber Grp., Inc.,* 347 Ill.App.3d 243,

12

249 (1st Dist. 2004); *Schultze v. ABN AMRO, Inc.*, 2017 IL App (1st) 162140, ¶ 23 ("[i]n essence, in order to recover under the Act, a plaintiff is only required to demonstrate facts displaying mutual assent to terms," and "employers and employees may manifest mutual assent by conduct alone, including past practice").

The Fellowship argues that the metrics Miles-Cacella was charged with meeting were undefined and that, as a result, there is no circumstance in which the Fellowship could be obligated to pay Miles-Cacella a bonus. [10] at 6. Even where the employer has "absolute discretion" to determine whether to award the bonus, whether the employer's "decision was a reasonable exercise of its discretion is a question of fact." *McCleary*, 2015 IL App (1st) at ¶ 29. Miles-Cacella has alleged that there were good reasons to award the bonus (e.g., the same reasons—whatever they were—that caused her supervisors to give her positive performance reviews, *see* [1] ¶¶ 19, 20) and that, to the degree there were reasons not to award the bonus, those reasons were not good reasons. *See* [1] ¶ 23 (even though the rest of her team was fired, Miles-Cacella alleges that the cause was the Fellowship's failure to provide the support they needed and, in any event, a reasonable inference is that the Fellowship's decision to retain Miles-Cacella despite firing her team is evidence they believed she was performing within expectations). Even if the Fellowship was free to base their decision on any metric, the issue cannot be disposed of via a motion to dismiss where the Fellowship has failed to point to any justification for not awarding the bonus that is not at least partially contradicted by the allegations in the complaint.

The Fellowship argues that Miles-Cacella never demanded her bonus or otherwise indicated that she was entitled to it. [10] at 6. But the fellowship points to no legal support for the proposition that a demand was required. Bonuses count as "final compensation" under the Act, 820 Ill. Comp. Stat. Ann. 115/2, and every employer is required to pay any owed final compensation "in no case later than the next regularly scheduled payday" following an employee's separation. 820 Ill. Comp. Stat. Ann. 115/5. Employers are only required to issue payments for final compensation by check once the employee makes a written request for a check; there is no requirement that a demand be made before the final compensation becomes due. *See id.*

The Fellowship also argues that Miles-Cacella has failed to sufficiently allege that it was reasonable for Miles-Cacella to believe she was meeting the undefined metrics. *See* [20] at 4. But Miles-Cacella has alleged that she was promised a bonus if she received a positive six-month performance review, [1] ¶ 17, and that she received a positive review at around that time. [1] ¶ 20; [16] at 5–6. *See also* [1] ¶ 24 (she received positive marks during her initial one-year review, too). Even if that agreement fell short of a binding contract, and even if that agreement was not written, it could plausibly still be binding on the Fellowship under the Wage Protection and Collection Act. *Hess*, 668 F.3d at 452; *Zabinsky,* 347 Ill.App.3d at 249. And again, she alleges that she later met the metrics set out for her, once they were defined. *See* [1] ¶¶ 51, 57.

14

The Fellowship adds that the other members of her team were fired, suggesting she was not doing a very good job. [20] at 4. Again, this might be so—but whether the Fellowship abused its discretion in declining to award the bonus is a factual matter, *McCleary*, 2015 IL App (1st) at ¶ 29, and Miles-Cacella has sufficiently alleged that she was entitled to the bonus that she was denied. *See* [1] ¶¶ 91–96. And lastly, the Fellowship points out that, by the time Miles-Cacella was supposed to receive her raise, she was working in a different position than the one for which she had been hired. [20] at 4. But nothing about the terms of the alleged agreement precluded the possibility that Miles-Cacella would be eligible to receive the bonus even if she was moved to a different position; all she had to do was meet certain, undefined metrics during her six-month review, [1] ¶ 17, and she has alleged that she met those requirements and that the Fellowship wrongfully denied her the bonus. *See* [1] ¶¶ 91–96. She also alleged that the Fellowship later defined the metrics she needed to meet and that she met those new metrics while working at her new position. *See* [16] at 6. That is enough for purposes of this motion to dismiss.

IV. **Conclusion**

The Fellowship's motion to dismiss, [10], is denied. The Fellowship shall answer the complaint June 24, 2019, and a status hearing is set for July 9, 2019 at 9:30 a.m.

ENTER:

                                            Manish S. Shah
                                            United States District Judge

Date: June 10, 2019